UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

             Plaintiff,

                          Case #17-CR-6005-FPG

v.

                          DECISION AND ORDER

DAMON MONTGOMERY,
DESHAWNRA WILLIAMS,

             Defendants.
_____

   On January 19, 2017, the Federal Grand jury returned a Superseding Indictment charging Defendants Damon Montgomery and Deshawnra Williams with one count of narcotics conspiracy. *See* ECF No. 84. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this case was referred to United States Magistrate Judge Jonathan W. Feldman. *See* ECF No. 82. Before Judge Feldman, Montgomery and Williams filed omnibus motions that included multiple motions to suppress evidence. *See* ECF Nos. 89, 91, 116. Judge Feldman resolved the majority of Defendants' omnibus motions on the record. *See* ECF No. 109. Regarding Defendants' suppression motions, Judge Feldman issued a Report and Recommendation ("R&R"). *See* ECF No. 134. Judge Feldman's R&R recommends that this Court deny Defendants' suppression motions. *Id.*

   Currently before the Court are Defendants' objections to Judge Feldman's R&R and other rulings. *See* ECF Nos. 136, 140. Defendant Montgomery filed his objections on August 2, 2017. *See* ECF No. 136. After receiving an extension of time, Defendant Williams filed her objections on August 11, 2017. *See* ECF No. 140. The Government filed its responses on August 15, 2017. *See* ECF Nos. 141, 142.

1

**DISCUSSION**

This Court must conduct a *de novo* review of those portions of the R&R to which objections have been made. *See* 28 U.S.C. § 636(b)(1)(C). In doing so, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. As part of this review, the Court has considered all of the parties' submissions to date. Based upon that *de novo* review, the Court has no basis to alter, modify, or reject Judge Feldman's thorough and well-reasoned R&R.

**I. Defendant Montgomery**

Defendant Montgomery has asked the Court to resolve several issues. First, Montgomery objects to Judge Feldman's R&R regarding his suppression motion. *See* ECF No. 136. Second, Montgomery objects to Judge Feldman's orders regarding his motion for disclosure of informant information, motion for a *James* hearing, and motion to suppress identification. *Id.* Finally, Montgomery requests that this Court conduct an in camera review of the presentence report of government witnesses to determine whether those reports contain any exculpatory or impeachment materials and that this Court compel the Government to unseal redacted information.

**a. Motion to Suppress Wiretap Evidence**

Montgomery moved to suppress evidence obtained pursuant to a wiretap warrant for mobile telephone number 585-259-9554. *See* ECF No. 89. On December 4, 2015, New York State Supreme Court Justice Thomas Moran issued the wiretap warrant based on the sworn affidavits of Monroe County District Attorney Sandra Doorley and Rochester Police Department Investigator Edmond Bernabei. *See* ECF No. 133. Justice Moran issued extension orders on December 31, 2015, January 29, 2016, and February 26, 2016. *Id*.

In his motion to suppress, Montgomery argued that the affidavits failed to demonstrate probable cause and exhaustion of conventional investigative techniques. *See* ECF No. 89. Judge Feldman recommends rejecting those arguments. *See* ECF No. 134 at 9-21. First, regarding probable cause, Judge Feldman found that, considering the totality of the evidence, the initial application demonstrated probable cause and the extension applications demonstrated renewed probable cause. *Id.* at 10-16. Second, Judge Feldman found that the applications sufficiently explained why conventional measures of investigation would not have accomplished the stated goals of the investigation. *Id.* at 19-21. Now, objecting to Judge Feldman's R&R, Defendant Montgomery reiterates his arguments that the initial and extension applications were not based on probable cause and that the applications failed to demonstrate that law enforcement officers exhausted conventional investigative techniques before obtaining a wiretap warrant. ECF No. 136 at 8.

1. **Probable Cause**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Probable cause "does not demand certainty but only a fair probability that contraband or evidence of a crime will be found." *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004). The task of a judge presented with a warrant application "is simply to make a practical, common-sense decision" considering "all the circumstances set forth in the affidavit before him." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Reviewing courts must give "due weight to inferences drawn from those facts by resident judges and law enforcement officers," *United States v. Wilson*, 699 F.3d 235, 242 (2d Cir. 2012) (internal quotation marks and alterations omitted), because "experience and training may allow a law

3

enforcement officer to discern probable cause from facts and circumstances where a layman might not." *Gaskin*, 364 F.3d at 457. Further, reviewing courts "must accord considerable deference to the probable cause determination of the issuing [court]." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)).

Here, Defendant Montgomery argues that the warrant application lacked probable cause because it assumed Montgomery's guilt based on his criminal history, relied on a controlled purchase that took place almost two years before investigators applied for the warrant, and failed to describe the reliability of confidential informants. ECF No. 136 at 9-14. Further, Defendant Montgomery argues that the balance of the application merely speculated that the intercepted communications were criminal in nature and that Defendant Montgomery participated in them. *Id.* at 13-14. The Court disagrees.

First, although Investigator Bernabei's affidavit described Montgomery's criminal history and mentioned a two-year-old controlled purchase, *see* ECF No. 133 at 37-40, 42-43, the application does not detrimentally rely on that information. Investigator Bernabei mentions Montgomery's previous drug arrests and convictions to put the evidence of Montgomery's current role in a sophisticated drug distribution operation in context. *See United States v. Fury*, 554 F.2d 522, 531 (2d Cir. 1977) (considering the defendant's criminal record alongside other evidence and finding probable cause). The same can be said of the two-year-old controlled purchase. Investigator Bernabei described numerous controlled purchases, including three in the weeks leading up to the warrant application. Considered alongside the series of controlled purchases that followed it, the two-year-old controlled purchase illustrates the length of Montgomery's participation in this operation. *See United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) ("Where the affidavit establishes a pattern of continuing criminal activity, such that there is reason

to believe that the cited activity was probably not a one-time occurrence, the passage of time between the last alleged event and the warrant application is less significant.") (internal quotation marks omitted).

Second, the application sufficiently demonstrated the reliability of the confidential informants. Investigators relied on information from two confidential informants ("CI-1" and "CI-2"). *See* ECF No. 133 at 42-51. Investigators know both informants, and both informants have provided reliable information in the past. *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) ("Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information."). Additionally, both informants purchased heroin from Montgomery under the supervision of investigators. *Id.* at 73 ("An informant's participation in supervised drug purchases is powerful corroborative evidence for purposes of determining probable cause.").

Third, the Court does not agree that the balance of the information described in the application merely speculates about the criminal nature of intercepted communications and Defendant Montgomery's participation in them. Under the supervision of Investigator Bernabei, CI-2 made several phone calls to and received several phone calls from the 9554 number. *See* ECF No. 133 at 44-51. During those calls, CI-2 spoke to Montgomery and arranged to purchase heroin. *Id.* Following those phone calls, CI-2 purchased heroin. *Id.* On at least one occasion, CI-2 purchased heroin directly from Montgomery. *Id.* Moreover, pen register data indicated that, between October 15, 2015 and November 27, 2015, the 9554 number made contact with telephone numbers registered to individuals with drug-related histories hundreds of times. *Id.* at 51-55. Considering the totality of the circumstances, the applications demonstrated probable cause. *See United States v. Diaz*, 176 F.2d 52, 110 (2d Cir. 1999).

## 2. Exhaustion

An application for a wiretap warrant must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This requirement is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). The wiretap warrant application need only inform the issuing court "of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009). The reviewing court need only ensure that the facts set forth in the supporting affidavits were "minimally adequate" to support the issuing court's conclusion that wiretaps were necessary. *Id.* at 217.

Montgomery argues that Investigator Bernabei's affidavits indicated that conventional investigative techniques were successful. ECF No. 136 at 18-21. According to Montgomery, Investigator Bernabei's affidavit describes using conventional investigative techniques to obtain information about the drug distribution operations, such as the names of individuals involved in and the locations of drug transactions and stash houses, and to execute successful controlled purchases of heroin. *Id.* at 19-21. According to Montgomery, that information was sufficient to "succeed in the ultimate goal of arresting Damon Montgomery." *Id.* at 20. The Court does not interpret the goals of the investigation so narrowly and finds that Investigator Bernabei's affidavit was at least minimally adequate to support Justice Moran's conclusion that the wiretap was necessary.

The stated goals of the investigation were to "disable and dismantle the vertical distribution network of narcotics that extends around the target individuals," ECF No. 133 at 55, and the affidavits supporting the wiretap warrant applications sufficiently demonstrated why conventional investigative techniques were unlikely to accomplish that goal. As Judge Feldman noted, Investigator Bernabei's affidavit explained that confidential informants could not successfully infiltrate the drug distribution network, surveillance could not successfully monitor the drug related activities because various people, vehicles, and locations were used to transport and store the drugs, and pen registers, search warrants, and a Grand Jury could not successfully obtain information without arousing suspicion. ECF No. 134 at 20-21; ECF No. 133 at 58-64. Those techniques might have provided probable cause for the arrest of Montgomery, but the goal of the investigation was to uncover a larger drug conspiracy. To that end, the affidavits sufficiently demonstrated that conventional investigatory techniques were unlikely to succeed. *See United States v. Wilkinson*, 754 F.2d 1427, 1434 (2d Cir. 1985) ("This was no 'small time narcotics case' . . . , where simple investigative techniques might have sufficed, but a far-flung conspiracy that was impenetrable except by sophisticated electronic means."); *see also United States v. Feola*, 651 F. Supp. 1068, 1104 (S.D.N.Y. 1987) (dismissing the defendant's argument that conventional investigative techniques could have provided probable cause for the arrest of the defendant because the government's purpose "was not merely to arrest [the defendant], but to determine the extent of the conspiracy and catch all the participants").

**b. Motion for Disclosure of Informant Information**

Montgomery appears to object to Judge Feldman's denial of his request for the disclosure of informant information. *See* ECF No. 136 at 2-3. However, Judge Feldman granted that request. *See* ECF No. 110. Pursuant to Judge Feldman's order, the Government is to disclose informant

information 30 days before trial or at the pretrial conference, whichever is sooner. *Id.* For that reason, Montgomery's request is moot.

### c. Motion for *James* Hearing

Montgomery has also moved for a *James* hearing. *See* ECF No. 136 at 3-4. Courts use *James* hearings to determine, prior to trial, whether the Government can prove the alleged conspiracy by a preponderance of the evidence and thus can admit co-conspirator statements under FED. R. EVID. 801(d)(2)(E). *See United States v. James,* 590 F.2d 575, 582 (5th Cir. 1979) ("The district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator."). Judge Feldman denied Montgomery's request for such a hearing. *See* ECF No. 110. Montgomery now renews his request. *See* ECF No. 136 at 3-4. Montgomery argues that the Government may attempt to offer hundreds of co-conspirator statements at trial and, unless the admissibility of those statements is determined prior to trial, he will face serious and irreparable prejudice. *Id.*

Under Rule 801(d)(2)(E) a statement "is not hearsay" if it "is offered against an opposing party and" is made by the "party's coconspirator during and in furtherance of the conspiracy." To admit a statement by a co-conspirator under Rule 801(d)(2)(E), a court must find by a preponderance of the evidence that "(1) there was a conspiracy, (2) its members included the declarant and the party against whom the statement is offered, and (3) the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *Diaz*, 176 F.3d at 83.

The Second Circuit does not require *James* hearings to determine the admissibility of statements under Rule 801(d)(2)(E). *See United States v. Lighten*, No. 08-CR-214A, 2010 WL 3853307 (W.D.N.Y. Mar. 1, 2010), *report and recommendation adopted*, 2010 WL 3834572 (W.D.N.Y. Sept. 29, 2010). Instead, statements are admitted on a conditional basis, and if the

8

Government is unable to prove the prerequisites for admission under Rule 801(d)(2)(E), courts in this circuit either instruct juries to disregard the statements or declare mistrials. *United States v. Geaney*, 417 F.2d 1116, 1119-20 (2d Cir. 1969) ("[T]he judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances.").

Accordingly, courts in the Second Circuit have consistently rejected requests for *James* hearings. *See, e.g.*, *United States v. Rowland*, No. 14-CR-79, 2014 WL 3908115, at *1 (D. Conn. Aug. 11, 2014); *United States v. Fallas*, No. 09 CR. 342 LAP, 2010 WL 3468605, at *4 (S.D.N.Y. Aug. 19, 2010); *Feola*, 651 F. Supp. at 1129-30 ("In this Circuit, the functional equivalent of what the Fifth Circuit calls a *James* hearing and requires before trial is provided by a *Geaney* ruling, which is provided only during trial, and relies for its basis on the facts adduced at trial, including evidence received subject to a motion to strike at the close of the Government's case."). Montgomery provides no reason to deviate from the Second Circuit's standard procedure. *See Fallas*, 2010 WL 3468605, at *4. Therefore, Montgomery's request for a *James* hearing is denied.

### d. Motion to Suppress Identification

Next, multiple confidential informants identified Montgomery as a member of the drug distribution operation at issue in this case and Montgomery has moved to suppress those identifications. *See* ECF No. 136 at 4-5. Judge Feldman denied Montgomery's initial motion to suppress the identifications. *See* ECF Nos. 89, 110. Montgomery now renews that motion. *See* ECF No. 135 at 4-5. Montgomery argues that the identification procedures were impermissibly suggestive. *Id.* The Court finds this motion to be premature.

The Court must exclude an identification when there is "a very substantial likelihood of irreparable misidentification." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). But an identification "infected by improper police influence" is not automatically excluded. *Id.* If the circumstances around the identification suggest an "indicia of reliability" that is "strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances," the identification should be admitted. *Id.*

During a suppression hearing before Judge Feldman, the Government described the identification procedure used in this case. *See* ECF No. 109 (Minute entry for proceedings held on April 4, 2017). Investigators showed a confidential informant a "six-pack" photo spread. *Id.* The confidential informant identified Montgomery from that spread. *Id.* According to the Government, before becoming involved with the investigation in this case, the informant made multiple buys from Montgomery and knew Montgomery personally. *Id.* After hearing this description of the identification procedure, Judge Feldman ordered that the Government produce the name of this confidential informant 30 days before trial and suggested that, if Montgomery believed the confidential informant lacked a factual basis to support the positive identification, he could renew his motion to suppress the identification at that time. *Id.* That time has not come yet. For that reason, Montgomery's renewed motion is denied without prejudice.

### e. Motion for In Camera Review and Motion to Unseal

Lastly, Montgomery requests that this Court conduct an in camera review of the presentence report of government witnesses to determine whether those reports contain any exculpatory or impeachment materials and that this Court compel the Government to unseal redacted information. These motions will be addressed at the pretrial conference.

## II. Defendant Williams' Objections

Defendant Williams has made two objections to Judge Feldman's R&R. *See* ECF No. 140. First, Williams objects to Judge Feldman's recommendation regarding her motion to suppress wiretap evidence. *See* ECF Nos. 91, 134, 140. Second, Williams objects to Judge Feldman's recommendation regarding her motion to suppress evidence obtained pursuant to a search warrant. *See* ECF No. 91.

### a. Motion to Suppress Wiretap Evidence

Williams moved to suppress evidence obtained pursuant to a wiretap warrant for mobile telephone number 585-698-7288. *See* ECF No. 132. Justice Moran issued the wiretap warrant for the 7288 number on March 7, 2016. *Id.* This warrant was also issued based on the sworn affidavits of District Attorney Doorley and Investigator Bernabei. *Id.*

In her motion to suppress, Williams argued that the affidavits failed to demonstrate exhaustion of conventional investigative techniques. *See* ECF No. 91. Judge Feldman recommends rejecting that argument. *See* ECF No. 134 at 3-8. Judge Feldman concluded that, in demonstrating that conventional investigative techniques either failed or were unlikely to succeed if implemented, the application was at least minimally adequate. *Id.* Objecting to Judge Feldman's R&R, Williams makes two arguments. *See* ECF No. 140 at 1-3. First, Williams argues that the conclusory language used in the application was insufficient to demonstrate exhaustion. *Id.* Second, Williams argues that the application considered conventional techniques individually rather than illustrating that conventional techniques, taken together, had failed or were unlikely to succeed. *Id.* Such an individualized analysis, Williams argues, is insufficient. *Id.*

As noted above, an application for a wiretap warrant must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why

11

they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). That statement must inform the issuing court "of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *Concepcion*, 579 F.3d at 218. The reviewing court need only ensure that the facts set forth in the supporting affidavits were "minimally adequate" to support the issuing court's conclusion that wiretaps were necessary. *Id.* at 217.

First, the application does not detrimentally rely on conclusory language regarding the difficulties inherent in using conventional measures to investigate drug dealers. The Second Circuit rejects "generalized and conclusory statements that other investigative procedures would prove unsuccessful." *See United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983). At times in his affidavit, Investigator Bernabei generalized about the habits of drug dealers.[1] But an affidavit that contains detailed descriptions of investigative measures taken does not fail because it also contains some generalizations. *Id.* (citing *United States v. Williams*, 580 F.2d 578, 589 (D.C. Cir. 1978) (finding an affidavit that contained both detailed descriptions of investigative measures taken and generalized and conclusory statements sufficiently demonstrated exhaustion)). In addition to generalizing about the habits of drug dealers, Investigator Bernabei noted that informants working with the investigators did not have knowledge of the broader scheme and were not in positions to infiltrate the larger network. *See* ECF No. 132 at 78-83. Investigator Bernabei explained that, although surveillance had been "helpful in identifying locations and vehicles," it could not distinguish between innocent and criminal behavior and was countered with evasiveness. *Id.*

---

[1]  For example, Investigator Bernabei noted that "drug dealers commonly use multiple locations to store drugs and money," and that "[o]ften, witnesses and victims have been targeted and threatened that if they assist law enforcement in any way there will be retaliation against them." ECF No. 132 at 50.

Taken as a whole, Investigator Bernabei sufficiently demonstrated exhaustion of conventional investigative techniques.

Second, the application does not fail to demonstrate exhaustion merely because Investigator Bernabei did not clarify that all conventional techniques employed, taken together, failed or were unlikely to succeed. Williams argues that Investigator Bernabei attempted to minimize the significance of the evidence obtained through conventional investigative measures by analyzing each measure in isolation, instead of aggregating what all of the conventional investigative measures accomplished and then considering whether a wiretap was necessary. *See* ECF No. 140 at 3. Even considering all investigative measures in aggregate, the wiretap warrant was still necessary to accomplish the goal of the investigation. Although Investigator Bernabei indicates that investigators gained some information from confidential informants and additional information from surveillance, Investigator Bernabei made clear that no conventional investigative measure was able to reach the source of the drugs. *See* ECF No. 132 at 50. Further, an affidavit in support of a warrant application need only inform the issuing court "of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *Concepcion*, 579 F.3d at 218. Investigator Bernabei's affidavit did just that.

**b. Motion to Suppress Search Warrant Evidence**

Williams also moved to suppress evidence obtained pursuant to a wiretap warrant for 31 Canary Street. *See* ECF No. 89. On March 16, 2016, Justice Moran signed the search warrant based on a sworn affidavit from Investigator Bernabei. *See* ECF No. 116, 1-2. On March 22, 2016, investigators searched 31 Canary Street and seized nine bags of heroin, one bag of marijuana, mail addressed to Williams, four cell phones, a Samsung tablet, a digital scale, an iPad, an Enterprise rental agreement, surveillance cameras and other items. *See* ECF No. 116 at ¶ 8.

In her motion to suppress, Williams argued that Investigator Bernabei's affidavit failed to establish probable cause. *See* ECF No. 89. Judge Feldman recommends rejecting that argument. *See* ECF No. 134 at 21-30. First, Judge Feldman found that Investigator Bernabei's affidavit, which described a series of intercepted calls illuminating a network of criminal drug trafficking, established probable cause to believe that Williams was involved in the criminal conduct. *See id.* at 25-28. Second, Judge Feldman concluded that Investigator Bernabei's affidavit established probable cause to believe that investigators would find drug-related evidence in 31 Canary Street. *See id.* at 28-30. Now, objecting to Judge Feldman's R&R, Williams reiterates her arguments that Investigator Bernabei's affidavit did not demonstrate probable cause to believe that Williams was involved in the drug dealing operation or that investigators would find drug-related evidence in 31 Canary Street. *See* ECF No. 140 at 4-6.

1. **Standing**

As an initial matter, Judge Feldman noted that Williams has not demonstrated sufficient facts to show that she had a legally cognizable privacy interest in 31 Canary Street. *See* ECF No. 134 at 22-24. In order to establish a Fourth Amendment violation, a defendant must show that he or she had a reasonable expectation of privacy in the thing or place searched. *See Katz v. United States*, 389 U.S. 347, 361 (1967). To demonstrate a privacy interest, a defendant "must submit an affidavit from someone with personal knowledge, demonstrating sufficient facts to show that he [or she] had a legally cognizable privacy interest in the searched premises at the time of the search." *United States v. Baker*, No. 07-CR-126A, 2009 WL 6594328, at *1 (W.D.N.Y. Dec. 17, 2009), *report and recommendation adopted*, 2010 WL 2465533 (W.D.N.Y. June 14, 2010). Williams has not submitted an affidavit demonstrating that she had a privacy interest in 31 Canary Street. But because the Government did not address the issue of standing, Judge Feldman assumed that

Williams established a reasonable expectation of privacy in the residence.  *See* ECF No. 134 at 23-24.

In its response to Williams' objections to Judge Feldman's R&R, the Government again did not contest Williams' standing to challenge the search of 31 Canary Street.  *See* ECF No. 142.  Indeed, in her objections to Judge Feldman's R&R, Williams acknowledges that her previous submissions may be insufficient to demonstrate a privacy interest in 31 Canary Street.  *See* ECF No. 140 at 4.  Having said that, Williams also asserts that there is no dispute between the parties that 31 Canary Street is her home.  *Id.*  Further, Williams asserts that, if standing is an issue, she could provide the Court with additional submissions to demonstrate her privacy interest in 31 Canary Street.  *Id.*  Because the issue is not disputed, and because Investigator Bernabei's affidavit supports Williams' contention that 31 Canary Street is her home, the Court will assume that Williams has demonstrated a reasonable expectation of privacy in the dwelling.

**2. Probable Cause to Believe that Williams Was Involved in Criminal Conduct**

Williams objects to Judge Feldman's finding that Investigator Bernabei's affidavit demonstrated probable cause to believe that Williams was engaged in drug trafficking.  *See* ECF No. 140 at 5.  Williams argues that, although Investigator Bernabei's affidavit mentions her, Investigator Bernabei's references to her are conclusory and unsupported by personal knowledge.  *Id.*  The Court disagrees.

Investigator Bernabei's affidavit describes numerous intercepted calls indicating that Williams was involved in the drug dealing operation.  For instance, four phone calls made on March 11, 2016 indicate that Defendant Montgomery arranged for Williams pick up heroin for him.  *See* ECF No. 116, 2 at 25-26.  Additionally, Investigator Bernabei's affidavit describes surveillance that corroborates the information intercepted from those phone calls.  Rochester

15

Police Department officers observed Williams as she pulled up to a Honda Accord in a Tops Supermarket parking lot on March 22, 2016. *See id.* at 26-27. Officers witnessed Williams and the driver of the Honda exit their vehicles, speak to each other, approach the trunk of the Honda, and then return to their vehicles. *Id.* at 27. Later that day, a Rochester Police Department officer stopped the Honda driver for a traffic violation. *Id.* In the Honda, the officer found a loaded gun, $4,250 in cash, and 62 Ziploc baggies of heroin, and 21 Ziploc baggies of cocaine in the Honda. *Id.* A surveillance team observed a similar encounter the following day. *Id.* at 27-28. Based on the foregoing, it was reasonable for Justice Moran to conclude that Investigator Bernabei's affidavit demonstrated probable cause to believe that Williams was involved in drug trafficking activities.

### 3. Probable Cause to Believe that Evidence of Criminal Conduct Would be Discovered at 31 Canary Street

Williams also objects to Judge Feldman's finding that Investigator Bernabei's affidavit demonstrated probable cause to believe that a search of 31 Canary Street would produce evidence of drug trafficking. *See* ECF No. 140 at 5-6. Williams specifically objects to the application's reliance on Investigator Bernabei's training and experience in demonstrating probable cause. *See id.* This argument also fails.

Probable cause to search a particular location exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. An officer's experience is "an important factor" for a judge to consider in reviewing a warrant application. *See United States v. Fama*, 578 F.2d 834, 838 (2d Cir. 1985). Further, courts have recognized that "major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers, and other documents evidencing their criminal activities." *United States v. Mouson*, 16-CR-284, 2016 WL 7188150, at *5 (S.D.N.Y. Dec. 2, 2016). Indeed, "[p]robable cause

16

determinations are frequently upheld in situations where a law enforcement officer provides an expert opinion that drug traffickers often maintain evidence of their crimes at their residences." *United States v. Fernandes*, 50 F. Supp. 3d 398, 405 (W.D.N.Y. 2014). That is true even in the "absence of any specific information connecting suspected drugs to [those] premises." *United States v. Jackson*, 493 F. Supp. 2d 592, 610 (W.D.N.Y. 2006). Finally, while the judge considering a warrant application must look for a "fair probability" that evidence will be found, "the duty of a reviewing court is simply to ensure that the [issuing court] had a substantial basis for concluding that probable cause existed." *Illinois*, 462 U.S. at 238-39.

Investigator Bernabei's affidavit provided a substantial basis for Justice Moran to conclude that there was a fair probability that investigators would find evidence of drug dealing in 31 Canary Street. In his affidavit, Investigator Bernabei stated that, in his 25 years of experience, "it is common for drug dealers to hide contraband[,] proceeds of drug sales, and records of drug transactions in . . . their residences for ready access and to conceal them from law enforcement authorities." ECF No. 116, 2 at 31. He explained that he has "participated in the execution of 500 search warrants at the residences . . . of drug traffickers and [has] frequently found notes, books, ledgers, and computer files reflecting names, addresses, and other personal identifying information [of] drug associates." *Id.* He also explained that "persons involved in drug trafficking often conceal in their residences quantities of drugs, large amounts [of] currency . . . and other articles of value which are the proceeds of drug transactions." *Id.* at 32.

In addition to Investigator Bernabei's description of his experience with drug dealers keeping contraband in their homes, Investigator Bernabei's affidavit illustrates that Williams left 31 Canary Street to travel to drug deals and returned to 31 Canary Street immediately following drug deals. For instance, on March 11, 2016, investigators intercepted a call during which

Defendant Montgomery told Williams to meet Frank Figueroa in the parking lot of a Tops Supermarket to pick up heroin. *See id.* at 27. A surveillance team observed Williams leave 31 Canary Street and drive to the Tops parking lot. *Id.* There she met Figueroa. *Id.* Williams approached Figueroa, Figueroa opened the trunk for a brief moment, and then both Williams and Figueroa returned to their vehicles. *Id.* Similarly, on March 12, 2016, investigators intercepted a call during which Defendant Montgomery instructed Figueroa to deliver heroin to Montgomery and Williams in a Tops parking lot. *See id.* at 30. Roughly 30 minutes later, a surveillance team observed Figueroa approach Williams and Montgomery in the Tops parking lot. *See id.* at 30. Figueroa approached Williams' driver-side door, Williams opened the door, and after about two minutes, the man returned to his car. *Id.* Williams then drove directly to 31 Canary Street. *Id.*

The logistical proximity of these drug deals to 31 Canary Street, considered with Investigator Bernabei's 25 years of experience, provided a substantial basis for Justice Moran to conclude that there was a fair probability that investigators would find evidence of drug dealing in 31 Canary Street.

### 4. Good Faith

Finally, even if the warrant application did not demonstrate probable cause, there is no reason for this Court to find that the investigators reliance on it was objectively unreasonable. Evidence obtained pursuant to a warrant that was not supported by probable cause is nonetheless admissible where the executing officers relied on it good faith. *See United States v. Leon*, 468 U.S. 897, 923 (1984). As Judge Feldman concluded, there is no reason to believe that investigators did not rely on the search warrant issued by Justice Moran in good faith.

## CONCLUSION

For the reasons stated, Judge Feldman's R&R (ECF No. 134) is ADOPTED IN ITS ENTIRETY. Defendants' motions to suppress (ECF Nos. 89, 91) are DENIED.

IT IS SO ORDERED.

Dated: August 31, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court